UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:19-cr-209-ORL-40LRH

IVAN ANDRE SCOTT

**GOVERNMENT'S NOTICE AND MOTION TO PRECLUDE
TESTIMONY OF ROBYN LYNN SZTYNDOR AND EXCLUDE
<u>DEFENSE EXHIBITS 35-36 AND 39-42</u>**

The United States of America hereby moves to preclude the testimony of Robyn Lynn Sztyndor, who the Defendant first noticed as a witness on December 31, 2020.  On January 1, 2021, the Defendant notified the government that Ms. Sztyndor—who holds herself out as a health care attorney and represents or has represented numerous individuals under investigation for federal crimes in connection with cancer genetic ("CGx") testing and telemedicine fraud schemes—will testify as a "fact witness" concerning "some conversations between Ivan [Scott] and parties involved in the case."  The government moves to exclude evidence regarding these conversations for several reasons.

First, as explained below, the proffered testimony of Ms. Sztyndor and related exhibits essentially boils down to this: Defendant, along with other patient recruiters, referred Medicare beneficiaries to labs not charged in this indictment:

Metric Labs and Spectrum Labs.  In or around June 2019, Defendant and the other patient recruiters learned that the owners of Metric and Specturm would not be paying the illegal kickbacks owed to the patient recruiters for the patient referrals. Defendant now seeks to introduce, through Ms. Sztyndor, evidence that between June 2019 (approximately a month after the conspiracy alleged in the indictment ended in May 2019) through November 2019, Defendant and the other patient recruiters discussed strategies to extract payment from the owners of Metric and Spectrum – including threatening a lawsuit against the two owners. Notwithstanding the fact that none of the patient recruiters ever actually filed a lawsuit against Metric and Spectrum, Defendant now seeks to introduce evidence of these discussions to prove he did not know the conduct with which he is charged was illegal.

Such evidence is classic inadmissible hearsay.  The proposed testimony is the same as Defendant proffering a third-party to testify, "Ivan Scott told me he is innocent."  But such self-serving false exculpatories – introduced through third parties – do not fit within any hearsay exception.

Moreover, the proposed testimony and exhibits are irrelevant.  Neither Defendant nor any other patient recruiter actually filed a lawsuit against Metric or Spectrum.  All they did was make threats to file a lawsuit in an attempt to extort illegal payments from the lab owners.  If Defendant had actually followed through with his threat of a lawsuit and filed a complaint in open court saying he

was demanded money – that might be relevant to Defendant's state.   But Defendant's idle threats to file a lawsuit – which the Court will learn through the course of the trial was a common tactic of Defendant's – shed no light on his mental state and fall far short of showing that he thought what he was doing was legal.  The testimony and exhibits must be excluded for this additional reason.

Second, to the extent Ms. Sztyndor will introduce evidence to lay the groundwork for an advice of counsel or good faith defense (such as by introducing Defense Exhibits 35-36 and 39-42[1]), her testimony is precluded by the Court's prior order on this topic.  In any event, the evidence disclosed by the Defendant to date does not lay an adequate basis for asserting an advice of counsel or good faith defense and therefore is irrelevant for that purpose.

Finally, although defense counsel has represented that Ms. Sztyndor's testimony will not pertain to Medicare regulations concerning the coverage of cancer genetic ("CGx") testing or the Anti-Kickback Statute ("AKS"), the government nonetheless seeks to preclude any legal opinion or expert testimony

---

[1]     On January 2, 2021, the Defendant sent the government an exhibit list that has not yet been filed on the docket, which included additional exhibits not previously identified on the Defendant's previously filed exhibit list.   The government assumes that the Defendant has provided the Court with copies of all its exhibits and updated exhibit list, as required.  If not, the government is happy to provide the Court with copies of the defense exhibits discussed herein.

by Ms. Sztyndor on these topics based on recent communications Ms. Sztyndor has sent to the government.[2]

## Procedural History

The Defendant was indicted on September 24, 2019 for his role in a scheme to defraud Medicare and pay and receive kickbacks in connection with fraudulent CGx testing and telemedicine services.  (Dkt. 1)  The indictment alleges that between November 2018 and May 2019, Defendant engaged in a conspiracy to defraud Medicare and to pay and receive kickbacks.  After several continuances (Dkt. 46, 51, 54, 57, 67, 71), this case is set to begin trial on January 4, 2021.

On February 20, 2020, the government represented during a status conference that defense counsel advised that they did not possess reciprocal discovery, would not offer an advice of counsel defense and would not disclose an expert witness.  (Dkt. 34 citing Rough Tr. 174:20-25).  The government has received no notice of expert testimony from the Defendant to date.

On March 12, 2020, the Court precluded the Defendant "from asserting an advice of counsel or good faith defense at trial, including but not limited to

---

[2]     The government reserves all other objections to Ms. Sztyndor's testimony, including on relevance grounds.  The government cannot meaningfully present such objections here without knowing the anticipated scope of the testimony in this case.

calling witnesses for the purpose of advancing an advice of counsel defense, or referencing attorneys or advice received from attorneys during opening argument, cross-examination of Government witnesses and closing argument." (Dkt. 44)

On December 31, 2020—just four days before trial is scheduled to begin—the Defendant filed his witness list, which, for the first time, informed the government that he plans to call Robyn Lynn Sztyndor.  Notably, the Defendant did not disclose Ms. Sztyndor as an expert witness, nor did the Defendant provide the government with any summary of Ms. Sztyndor's opinions, bases and the reasons for the opinions, or her qualifications as required by the Court's Scheduling Order and Federal Rule of Criminal Procedure 16(b)(1)(C).[3]

On January 1, 2021, the Defendant informed the government that Ms. Sztyndor would offer "fact witness" testimony regarding "some conversations"

---

[3]      On September 26, 2019, the Court entered a Scheduling Order requiring the government to notice any expert witnesses within 14 days, and the Defendant to notice any expert witnesses within 21 days.  (Dkt. 8)  On October 16, 2019 and, following trial continuances, on January 31, 2020, the Government disclosed to the Defendant via letters that the government intends to call two expert witnesses:  Stephen Quindoza, an expert regarding Medicare coverage requirements; and Dr. Anthony Magliocco, an expert regarding cancer and cancer genetic testing.  The government provided fulsome disclosures of the qualifications and nature and scope of both witnesses' anticipated testimony.  The government also identified both experts on witness lists filed on March 11, 2020 and December 28, 2020.  (Dkt. 40, 85)

to which she, the Defendant, and others were a party.  Defendant did not provide any further detail about Ms. Sztyndor's testimony.

On January 2, 2021, the Defendant produced select defense exhibits to the government along with a new exhibit list disclosing additional conversations involving Ms. Sztyndor that were not identified on the Defense exhibit list previously filed with the Court on December 31, 2020.  Defendant offered no explanation for the lateness of these disclosures.   The government is still reviewing these exhibits—the majority of which the government saw for the first time on January 2—and reserves any additional objections to assert at a later time, but wanted to alert the Court to the objections contained in this motion as early as practicable.

### Background on Ms. Sztyndor

Ms. Sztyndor leads RLS Law P.A.[4]  Ms. Sztyndor represents multiple individuals charged with, or being investigated for, fraud and/or kickback schemes pertaining to CGx testing and telemedicine. In that capacity, Ms. Sztyndor has been in communication with government attorneys regarding these investigations.

Between December 26, 2020 and December 30, 2020, Ms. Sztyndor sent at least 15 emails to various federal prosecutors (but not undersigned counsel)

---

[4]      *See* RLS Law PA, *available at* https://rlslawfl.com/ (last accessed 12/31/2020).

outlining various legal theories about Medicare rules and regulations and the AKS.  The emails attached legal memoranda from Ms. Sztyndor, which appear to be in draft, rather than final, form.  In essence, Ms. Sztyndor argued that (i) based on her review of various Medicare rules and regulations, and contrary to the allegations in the indictments of her clients and others, Medicare provided coverage for cancer screening genetic tests in the absence of signs of symptom of disease; and (ii) the kickback payments from labs to marketers of CGx tests were exempted from the AKS under certain statutes and regulations.  On these grounds, Ms. Sztyndor asserted that CGx-related indictments should be dismissed.[5]

According to her draft legal memoranda, Ms. Sztyndor strongly opposes the government's prosecution of multiple actors in the cancer genetic testing fraud space.  Notably, some individuals being prosecuted and others who are under federal investigation report that Ms. Sztyndor represented them at some point in time.  Furthermore, Ms. Sztyndor's drafts argue, without merit, that the government's prosecution theory is wrong and the CGx-related indictments are invalid.  These memos cite to Medicare rules and regulations regarding Medicare

---

[5]      To the government's knowledge, Ms. Sztyndor has not actually moved to dismiss any CGx cases.  Rather, the government believes that Ms. Sztyndor conveyed these draft legal memoranda to convince the government to dismiss CGx indictments or to cease CGx-related investigations, including investigations into her own clients.

coverage of CGx testing, many of which were noticed on the Defendant's December 31, 2020 exhibit list.

On December 29, 2020, defense counsel inquired about memoranda written by Ms. Sztyndor that may undercut the prosecution's theory against the Defendant.  Defense counsel asked if there was anything that the government needed to disclose in that regard.  The government responded on December 30, 2020, confirming that Ms. Sztyndor had sent what appeared to be legal argument in draft format.  The government further stated that the draft legal arguments were meritless and that the government had no obligation to disclose these draft legal memoranda.  Defense counsel did not respond to the government, but filed his witness and exhibit lists the next day.

The Defendant provided certain exhibits and an updated exhibit list to the government on January 2, 2021, which identifies the following Defense Exhibits ("DX") involving Ms. Sztyndor:

- DX35:  A June 21, 2019 to May 15, 2020 email chain involving Ms. Sztyndor, Ivan Scott, an attorney named Sam Louis who represented a lab called "Metric," and numerous other marketers who, like Ivan Scott, were paid kickbacks by Metric in exchange for patient referrals.[6]

---

[6]   Defendant's kickback relationship with Metric was disclosed in the government's 404(b) notice out of an abundance of caution, although the particular evidence regarding Metric that the government intends to introduce is inextricably intertwined with the charged conspiracy and therefore not 404(b) evidence.  In contrast, the conversations the Defendant seeks to introduce regarding Metric have nothing to do with the charged conspiracy.

- DX36:  A June 22, 2019 email from Ms. Sztyndor to Sam Louis, copying Ivan Scott and the other marketers.

- DX39:  June 2019 – November 2019 Whats App messages for a chat group called "Settlement Group," which includes Ivan Scott, Ms. Sztyndor, and the other marketers who had worked for Metric.

- DX40-41:  Two July 4, 2019 recordings of Ivan Scott which were sent to the "Settlement Group" as voice messages.

- DX42:  A November 3, 2019 recording of Sean Quilter (a now-deceased marketer who Ms. Sztyndor purported to represent) and was sent to the "Settlement Group" as a voice message.

## ARGUMENT

### I.    Ms. Sztyndor's Testimony About Conversations Involving The Defendant Is Inadmissible Hearsay And Irrelevant.

According to the Defendant, Ms. Sztyndor will testify solely about conversations between the Defendant and other parties.  Such testimony is hearsay, unless it satisfies a hearsay exception or is not offered for its truth.  Fed. R. Evid. 801,[7] 802, 803.  Based on the limited disclosures from the Defendant concerning the purpose of Ms. Sztyndor's testimony, the government is constrained to conclude that she will testify to hearsay statements.  Such statements should be excluded.

---

[7]    Although the government can introduce Defendant's statements and those of his co-conspirators under Rule 801(d)(2), which provides that the statement of an opposing party is not hearsay, Defendant cannot rely on this provision to introduce his own statements through his own witness; they are  his statements, not the statements of a party opponent.

The conversations reflected in DX35-36, and 39-42 fall largely into five buckets, each of which is inadmissible for the reasons discussed below.  At bottom, these conversations have no evidentiary value and will serve solely to inflame and confuse the jury.

The Defendant has proffered that, these "statements will be used to impeach [government] witnesses who will claim that Ivan was knowingly participating in a kickback scheme. They are admissible as state of mind exceptions and present sense impressions."  In other words, the Defendant seeks to submit his own out-of-court statements, the out-of-court statements of numerous other marketers who are not witnesses in this case, and the views of Ms. Sztyndor (a lawyer who never represented the Defendant) as evidence of the Defendant's state of mind.  Such hearsay is no substitute for evidence.

## A. Legal Opinions From Sam Louis Are Inadmissible.

One category of hearsay statements contained in DX35 and 36 are legal opinions from Sam Louis, an attorney for the lab Metric, provided to Ms. Sztyndor and various marketers for Metric, including Ivan Scott,  indicating that Metric's payment arrangements with these marketers may have run afoul of the AKS, the CGx samples the marketers generated may not have been covered by Medicare, and therefore that Metric would not be paying the marketers.  For example, DX 35 reflects Mr. Louis' June 21, 2019 email to Ivan Scott, Ms.

Sztyndor, and numerous marketers who apparently worked for Metric, in which Mr. Louis states in part:

> [T]he Labs would not forward payment for marketing services as a result of concerns regarding:  1.  Whether the compensation arrangement with Marketing entities implicate the Anti-Kickback Statute due to payment based on a percentage of collections….

Mr. Louis' view of the law as reflected in an out-of-court statement is hearsay.  In addition, the fact that Mr. Louis' view of the law was communicated to the Defendant, other marketers for Metric, and Ms. Sztyndor is irrelevant to whether the Defendant committed health care fraud or violated the AKS with respect to his relationships with other labs.

### B. Legal Opinions And Other Commentary From Ms. Sztyndor Are Inadmissible.

A second category of statements throughout DX 35, 36, and 39 consists of legal opinion from Ms. Sztyndor indicating that her clients' contracts with Metric for flat fee payments were legal and that Mr. Louis' interpretation of Medicare coverage of CGx testing was incorrect.

For example, DX35 reflects Ms. Sztyndor's June 21, 2019 reply to Mr. Louis, copying Ivan Scott and numerous marketers, stating in part:

> [I]f these samples were generated unlawfully as you seem to indicate … , then I can only assume you fully refunded Medicare ….   I have reviewed my clients' agreements and have found nothing unlawful about an hourly agreement or a flat fee settlement payment.  Both are safe harbor compliant.

Ms. Sztyndor's view (expressed here in an inadmissible out-of-court statement offered for its truth) that her clients' arrangements with Metric were legal says nothing about whether the Defendant's arrangements with anyone, much less with the laboratories, marketers, and doctors at issue in the charged conduct, were legal.   Ms. Sztyndor has never purported to represent the Defendant and the fact that she sent incorrect legal advice in email or text message blasts to numerous individuals including the Defendant does not make her statements admissible or provide a defense in this case.   The Defendant has never disclosed what information about his arrangements with Metric or with the laboratories or players at issue in this case he ever provided to Ms. Sztyndor, which would be necessary to make her opinions relevant in any way.[8]   If the Defendant believed any of his arrangements were appropriate, the proper way to introduce such evidence is though his own testimony about his state of mind, under oath and subject to full cross-examination. Ms. Sztyndor's legal posturing on behalf of other individuals is not a substitute for admissible evidence.

Ms. Sztyndor made numerous other inadmissible comments through DX 39 that fall far short of legal opinion but are equally inadmissible.   For example, on July 2, 2019, Ms. Sztyndor stated that "he [Sam Louis] is kind of a slime ball. I was like let's get this in court and file a declaratory action that this was proper

---

[8]     Her opinions would still be irrelevant and inadmissible for many reasons, including those discussed in Section II and III.

and he didn't want to do that."  In another example from DX 39, Ms. Sztyndor stated on July 10, 2019 that, "I heard back apparently he [Sam Louis] threw the rep groups under the bus to DOJ."  These statements contain double hearsay, each layer of which is inadmissible.  In addition, Ms. Sztyndor's personal view of Sam Louis, her personal desire to sue Mr. Louis' client, and her belief (based on what she "heard back") that Mr. Louis "threw" unspecified "rep groups" under the bus is irrelevant and would serve only to inflame the jury and introduce confusion into this trial.

### C. Out-Of-Court Statements From Other Marketers Who Are Not Parties Or Witnesses In This Case Are Inadmissible.

A third bucket of hearsay statements contained throughout DX35-36, 39, and 42 include statements from other marketers besides the Defendant---who are not parties to or witnesses in this trial---expressing outrage over the fact that Metric refused to pay for their marketing services and contemplating a civil lawsuit against Metric to enforce payment.

For example, DX35 reflects one such marketer responding on June 21, 2019 to Sam Louis, Ms. Sztyndor, Ivan Scott, and numerous other marketers, as follows (in part):

> So in other words they [Metric] will not be paying medicare they are just using that as a way to steal money from all of us[.]  I find it to be very funny because they want to act as they are great people but in the same breath they are thieves HAHA[.]

Likewise, DX39 reflects another marketer messaging the following on July 18, 2019 to numerous participants in a Whats App messaging group called "Settlement Group," including Ms. Sztyndor, the Defendant, and other marketers for Metric: "I feel we need to file suit soon since nothing is improving or moving forward. What are all of your thoughts?" Mr. Scott responded to the group the same day, stating, "I agree."

This marketer's belief that Metric was stealing from him is immaterial, as is the fact that he apparently finds his predicament "funny," thinks that individuals associated with Metric are "thieves," and wants to sue them. DX 35, 36, and 39 and littered with similar gripes from these marketers about Metric's decision not to pay them, all of which are hearsay and entirely irrelevant. It makes no difference to this case that these individuals, who are not parties or witnesses in this case, were upset because they did not receive their kickback payments. Their discussions about a lawsuit against Metric---which never in fact materialized---simply flow from their anger toward Metric. This is inflammatory hearsay language designed to make it appear that labs took advantage of legitimate marketers, but such self-serving statements from an unsworn witness offered for their truth are inadmissible.

The same goes for the Defendant's statement that he "agree[s]" that Metric should be sued. If he would like to testify about suing Metric, to the extent any such testimony is relevant (which the government does not concede), the proper

way to do that would be through the Defendant's sworn testimony and not through an out-of-court statement offered for its truth and admitted through Ms. Sztyndor.[9]

### D. Any Discussions About The Validity Of Federal Indictments Or Investigations Are Inadmissible.

A fourth bucket of inadmissible hearsay statements include discussions among the Defendant, Ms. Sztyndor, and these other marketers about the validity of federal, criminal investigations and indictments and the potential cooperation of certain subjects in those investigations.

For example, DX39 reflects Ivan Scott's message on July 17, 2019 to numerous participants, including other marketers for Metric and Ms. Sztyndor: "Nope well my attorney today said his he [sic] thinks Metric is facing some prison time." Another marketer responded, "Yes because they committed fraud against all of us. They stopped paying in January and still signed with us and others in February and never told us to stop sending them patients." Likewise, in discussing a potential investigation of a different lab, Ms. Sztyndor informed the same group that, "They aren't subjects or targets because they never paid [lab] or engaged in business via a financial transaction."

---

[9]   DX 42, which is a recording from one of these other marketers, appears to have no content. In any event, the person who the Defendant alleges sent this recording is deceased.

The marketers or Ms. Sztyndor's statements about the nature of or the validity of federal indictments and investigations, contained through DX 39 are hearsay (and often double hearsay relaying what other individuals told them) and irrelevant. The marketers' self-serving belief that law enforcement's investigation of these matters are misguided is of no consequence in this trial.

**E. The Defendant's Own Statements Are Inadmissible.**

A fifth and critical category of statements is the Defendant's statements expressing desire to be paid by Metric, a desire to sue Metric, his indictment in this case, and the fact that he had attorneys looking into the money that Metric supposedly owed him.

For example, DX35 reflects Ivan Scott's June 21, 2019 response to Mr. Louis' email, copying Ms. Sztyndor and numerous other marketers: "My Attorney is working on this too they just opened a can for no reason I'm gonna go to there [sic] local paper about this I have all there [sic] names of this [sic] isn't settled soon." Likewise, DX36 reflects Ivan Scott's June 22, 2019 email to numerous marketers as well as Ms. Sztyndor, noting that, "Nice I'll tell my attorney as well [to join a call scheduled with Ms. Sztyndor and the other marketers] we have to win this I'm kinda excited I don't like bullies or thieves."

In DX39, participants circulated what appears to be a copy of the press release announcing Mr. Scott's indictment, to which Mr. Scott stated in part, "metric put me on the front line and then they gave me a bunch of bs charges

16

there [sic] going after so many people."  Ms. Sztyndor later commented that "Metric and spectrum deserve to be imprisoned.  That's so messed up," and offered for Mr. Scott's attorneys to "contact me for anything regarding healthcare law" because "I know the statutes really well."

DX 40 and 41 are both voice recordings that the Defendant appears to have sent on the same Whats App messaging group.  In DX40-41, the Defendant tells the group he "spoke to my attorney," who referred him to his "closest friend" who "specializes in health care fraud."  The Defendant said he wanted others from the group to join a call with this specialist because they need to be "precise" with this person because "he knows everything about everything."  Ultimately, the Defendant saw this as "our way out and to getting paid."  The Defendant went on to state that this person would "answer our questions" and "help us with whatever."

The Defendant cannot offer his own out-of-court statements as a substitute for testimony.  There is no non-hearsay purpose for which these statements would be relevant.  For example, it is immaterial what "effect" the Defendant's statements had on those who heard these statements (*i.e.*, these other marketers or Ms. Sztyndor) because their beliefs are not at issue in this case.  If the Defendant wants to testify that he thought all of his conduct was compliant, he can do so under oath before the jury and subject to cross-examination.  He cannot do so through Ms. Sztyndor.

\*     \*     \*     \*

The above discussion cites a handful of representative examples of the sort of hearsay and irrelevant statements contained in DX 35-36 and 39-42.  Although there are many other statements not expressly addressed in this motion, these exhibits and Ms. Sztyndor's testimony are inadmissible in their entirety.  If the Defendant believes that any statements to which Ms. Sztyndor intends to testify are non-hearsay or fall within a hearsay exception, the government requests that the Court require the Defendant to identify which statements he plans to introduce and the basis for admission, and then conduct a hearing outside the presence of the jury to determine the admissibility of each statement.[10]

## II.   __Ms. Sztyndor's Testimony Should Be Excluded To The Extent It Lays The Foundation For Any Form Of Advice Of Counsel Defense.__

In light of the numerous references contained in DX35-36 and 39-42 to attorneys or specialists that the Defendant supposedly hired, threats to sue Metric, and vague legal opinions offered by Ms. Sztyndor (who never represented the Defendant to the government's knowledge), the government anticipates that Defendant seeks to introduce Ms. Sztyndor's testimony and DX35-36 and 39-42 to lay the groundwork for an advice of counsel or good faith defense.  Such

---

[10]    In addition, much of the discussion on these email chains fall far outside the scope of the relevant conduct in this case, which is yet another reason why they are inadmissible.

evidence would be an end-run around this Court's prior order precluding this defense.

The Defendant is free to argue lack of criminal intent as his defense, but bootstrapping such an argument with these exhibits or testimony from Ms. Sztyndor concerning these or related conversations would directly contravene the Court's order precluding the Defendant from "asserting an advice of counsel or good faith defense at trial, including but not limited to calling witnesses for the purposes of advancing an advice of counsel defense, or referencing attorneys or advice received from attorneys." (Dkt. 44)

This is particularly true because the Defendant has – and cannot – show the requisite factual predicate for an advice of counsel or good faith defense. To establish an advice of counsel or good faith defense, Defendant must show that (1) he received the legal advice *before* engaging in the illegal conduct; (2) he completely disclosed to the lawyer the true nature of his conduct; and (3) he received legal advice and followed it. Nothing in DX35-36 or 39-42 provide such a foundation. With respect to other attorneys that the Defendant references he hired to sue Metric, none of the documents disclosed by the Defendant reflect any legal advice from them whatsoever. Ms. Sztyndor did not represent the Defendant and, in any event, appears to have become involved with the Defendant in June 2019---a month *after* the conspiracy alleged in the indictment is alleged to have ended in May 2019. In light of this, Ms. Sztyndor's testimony

and DX35-36 and 39-42 are irrelevant for an advice of counsel or good faith defense.

A recent example illustrates the government's concerns.  Ms. Sztyndor recently testified in a hearing in the Southern District of Florida before Judge Reinhart pertaining to privilege concerns asserted by a defendant who claimed he had entered into a common interest agreement with one of Ms. Sztyndor's clients.  In that case, Judge Reinhart declined to credit Ms. Sztyndor's testimony and found no common interest privilege.  *See United States v. Minal Patel*, Case No. 19-CR-80181-Ruiz/Reinhart, Dkt. No. 184 (Dec. 23, 2020).  Judge Reinhart afforded "no weight" to exhibits that Ms. Sztyndor testified established a common interest agreement.  *Id.* at 10-11.  One set of exhibits was "not probative" of whether a common interest agreement existed, "even after considering the documents together with Ms. Sztyndor's testimony," and another set of exhibits was "not given any weight because they are unsworn and self-serving hearsay created after Ms. Sztyndor … became aware of the indictment."  *Id.* at 11.

Here, too, many of Ms. Sztyndor's communications were sent after she became aware of government investigations in this space and, for some of her emails, after the Defendant's indictment (and many other CGx-related indictments) became public.  And it was not until Ms. Sztyndor started sending legal memoranda to various government prosecutors within the last week and

half that Ms. Sztyndor was noticed as a witness in this case.[11]   Although the government is not aware of a common interest agreement between the Defendant in this case and any of Ms. Sztyndor's clients, the government is concerned that Ms. Sztyndor may also attempt to testify in this case, as she did before Judge Reinhart, to try to establish such an agreement or, at minimum, to enable the Defendant to argue that he somehow relied on legal advice offered by Ms. Sztyndor or others – even though that legal advice would have been provided in June 2019, a month after the conspiracy alleged in the indictment ended in May 2019.

Moreover, Defendant has not disclosed to the government what he told Ms. Sztyndor, other participants in these conversations, or his own lawyers that he hired to sue Metric about his payment arrangements with Metric.   An attorney's legal opinion means nothing if it is based on false information.[12]   And

---

[11]    As discussed in the next section, the government has concerns that Ms. Sztyndor's testimony may also include testimony concerning her legal opinions set forth in the draft legal memoranda she recently sent to the government.

[12]    For instance, in DX35, Ms. Sztyndor states she reviewed her client's contract and "found nothing unlawful about an hourly agreement or a flat fee settlement payment."  But the evidence at trial will show that as to the charged conspiracy, Defendant was paid on a per patient basis, and executed sham contracts and invoices making it appear as if he were paid on an hourly basis.  If all Defendant disclosed to Ms. Sztyndor was the sham contracts and invoices and not the true per-patient compensation structure, Ms. Sztyndor's legal opinions about those contracts and invoices would be irrelevant.

in any event, the Defendant is not charged with unlawfully marketing for Metric. His charges relate to different labs and different marketing contracts. Any good faith defense based on Ms. Sztyndor's testimony or DX 35-36 and 39-42 would be hearsay, misleading to the jury, and overly prejudicial to the government. *See, e.g.*, *Pena v. Handy Wash, Inc.*, 114 F. Supp. 3d 1239, 1245 (S.D.F.L. 2015) ("Because the fact Defendants consulted counsel, without more, constitutes hearsay, and is furthermore irrelevant, misleading, and unfairly prejudicial to Plaintiff, this evidence is inadmissible.").

At minimum, if the Court declines to exclude DX35-36 and 39-42 or Ms. Sztyndor's testimony, the government requests that the Court require a proffer from defense counsel, outside the presence of the jury, as to why these exhibits and related testimony are relevant so that Ms. Sztyndor's testimony can be constrained to any limited admissible facts.

### III.   Ms. Sztyndor's Testimony Should Be Excluded As Improper Legal Opinion Or Insufficiently Noticed Expert Opinion.

Although defense counsel has represented that Ms. Sztyndor will not offer any opinions or testimony concerning Medicare coverage of CGx testing or the applicability of the AKS to marketers of CGx testing, the government remains concerned, based on Ms. Sztyndor's correspondence with other federal prosecutors, her statements in DX35-36 and 39-42, and the Defendant's exhibit list citing numerous Medicare coverage regulations previously relied upon by Ms.

22

Sztyndor, that Ms. Sztyndor may attempt to testify to the legal conclusions she previously presented in her draft memoranda to the government.  In essence, Ms. Sztyndor argues that the government's indictment against the Defendant is invalid because the government misinterprets Medicare rules and regulations, as well as the AKS.  Such testimony should be excluded for multiple reasons.

### A. Ms. Sztyndor May Not Offer Legal Opinion Testimony.

To the extent Ms. Sztyndor's testimony will offer legal opinions regarding Medicare coverage of CGx testing or the scope of the AKS, her testimony should be excluded as impermissible legal opinion.  "Testifying experts may not offer legal conclusions" and "courts must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law."  *Cook v. Sherriff of Monroe County*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005).

Ms. Sztyndor is unqualified to render anything but a legal opinion.[13]  Ms. Sztyndor, to the government's knowledge, has never worked for Medicare.  She has never processed claims for Medicare.  She has no relevant experience from which to form an opinion about what Medicare or its contractors might do or not

---

[13]     The government does not mean to imply that Ms. Sztyndor is qualified to render even the legal opinion she has put forth, and reserves the right to challenge Ms. Sztyndor's qualifications as a legal expert in the event the Court determines her legal opinion is admissible.

do in certain hypothetical situations.  Instead, she is a lawyer.  Ms. Sztyndor's legal conclusions derive not from her personal experience processing or auditing claims, interpreting and applying coverage guidelines to specific claims, or overseeing fraud investigations, but rather from her representation of multiple subjects who are now under federal, criminal investigation for their roles in various health care fraud schemes involving the use of telemedicine and CGx testing.[14]  Indeed, her legal opinions appear to have been reached in connection with her recent attempts to convince the government to dismiss CGx-related indictments.

As such, Ms. Sztyndor can make legal arguments on behalf of her clients. For instance, she can argue on behalf of her clients that if Medicare contractors take the position that Medicare does not cover genetic cancer screening tests, they are wrong as a matter of law.  But she is unqualified to testify about whether

---

[14]   Ms. Sztyndor also serves as criminal counsel for additional individuals. Some of these investigations remain covert, while others are overt but not yet publicly identified.  The government is prepared to disclose the names of those clients to the Court *ex parte*.

Ms. Sztyndor's representation of multiple individuals accused of similar conduct also creates the potential for conflicts of interest.  It is difficult to imagine how Ms. Sztyndor can testify completely on cross-examination without revealing her client's confidences, intruding on her clients' attorney-client privilege, or potentially taking positions under oath that undercut her clients' positions.  This is yet another reason why she should not be permitted to testify at all.

Medicare contractors <u>in fact</u> would take that position when presented with circumstances surrounding a particular claim.

In contrast, the government's proposed Medicare expert, Stephen Quindoza, has decades of personal experience processing claims submitted to Medicare. He has also overseen fraud investigations pertaining to claims submitted to Medicare, and educated others on how Medicare functions. As a result of his personal experience, Mr. Quindoza has obtained "scientific, technical, or other specialized knowledge within the scope of Rule 702," and can testify about "how Medicare functions and what Medicare would do in a number of hypothetical circumstances." *Willner*, 795 F.3d 1297, 1318 (11th Cir. 2015). Thus, Mr. Quindoza can testify about how Medicare in fact interprets regulations when deciding whether to pay a claim for reimbursement, and whether Medicare would in fact pay a claim if it knew certain circumstances around the claim. Similarly, while Mr. Quindoza can testify that Medicare does not cover genetic tests procured through kickback payments, Mr. Quindoza cannot testify that certain conduct violates the AKS. *See United States v. Crabtree*, 878 F.3d 1274, 1287-88 (11th Cir. 2018) (observing that it "may have been prejudicial" for government expert to testify that payments to doctor violated the Stark law, a civil kickback prohibition).

At its core, Ms. Sztyndor's opinion is that the government's indictments pertaining to CGx testing are fundamentally flawed, that Defendant's (and

25

others') conduct alleged in CGx-related indictments did not violate the law, and the indictment should be dismissed.  Such arguments go to the sufficiency of the indictment and should be decided by the Court; such arguments are not the province of the fact-finder.[15]  *Cook*, 402 F.3d at 1112 n.8.  If the Defendant truly believes Ms. Sztyndor's legal arguments have merit, the proper way to raise such arguments is not through the testimony in front of a jury of an attorney with other clients accused of the same misconduct, but rather through a motion to dismiss the indictment, the deadline for which has long since passed here.  (Dkt. 8).[16]

### B. Any Expert Opinion Testimony From Ms. Sztyndor Should Be Excluded For Inadequate Disclosure.

Although testimony from Ms. Sztyndor concerning Medicare coverage of CGx testing would be impermissible legal opinion, at best such testimony would be considered expert opinion.  *See, e.g.*, *Willner*, 795 F.3d at 1318 (finding that district court abused its discretion by allowing testimony from government witness on "how Medicare functions" and hypothetical situations since such testimony was expert opinion and government had not disclosed the witness as

---

[15]    As such, the government may also object to questions posed to Mr. Quindoza that ask him to render a legal conclusion, rather than a conclusion about the scope of coverage based on his personal experience and expertise.

[16]    Defendant's failure to file such a motion before now is inexcusable.  Ms. Sztyndor's legal theories are based on publicly available documents and regulations which have been available to the Defendant and his counsel for months.

an expert); *see also Crabtree*, 878 F.3d at 1287-88 (holding that district court did not abuse its discretion by allowing expert testimony concerning Medicare coverage guidelines for partial hospitalization programs).   If Ms. Sztyndor's testimony is considered expert opinion, then the Defendant's late and inadequate disclosure of an expert witness on the eve of trial contravenes the Court's Scheduling Order and unfairly prejudices the government.   In this case, such a belated and incomplete disclosure would warrant exclusion of any expert opinions that Ms. Sztyndor may seek to offer.   *See, e.g.*, *United States v. Petrie*, 302 F.3d 1280, 1288-89 (11th Cir. 2002) (upholding exclusion of defense expert where "defendant waited until Friday afternoon prior to the commencement of trial" to disclose an expert); *see also United States v. Blair*, 493 Fed. Appx. 38, 52 (11th Cir. 2012) (holding that the defendant's expert witness was properly excluded because the defendant failed to provide timely notice of the expert witness and because the proposed expert, who was a court employed interpreter, would have a conflict of interest).[17]

---

[17]     In addition, the government views Ms. Sztyndor's legal opinions on Medicare coverage of CGx testing as frivolous.  Presenting them to a jury in any fashion—through Ms. Sztyndor or otherwise—would only serve to confuse the jury.  To the extent Ms. Sztyndor's testimony does cover Medicare coverage or the AKS and the Court declines to exclude such testimony on the grounds presented herein, the government intends to request a *Daubert* hearing out of the presence of the jury to determine whether Ms. Sztyndor's testimony is admissible.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1983).

## Conclusion

For the foregoing reasons, the government respectfully requests that the Court exclude the testimony of Ms. Sztyndor and Defense Exhibits 35-36 and 39-42.  To the extent the Court declines to grant the government's motion, the government alternatively moves the Court:  (1) for a hearing outside the presence of the jury before Ms. Sztyndor's testimony begins to determine if any of her testimony is not hearsay; and (2) to order the Defendant to immediately produce Jencks material for Ms. Sztyndor as required under Rule 26.2(a).

<div style="margin-left:40%">

Respectfully submitted,

By:   */s/ Alejandro J. Salicrup*
Alejandro J. Salicrup
Jamie de Boer
Trial Attorneys
U.S. Department of Justice
Criminal Division, Fraud Section
400 West Washington Street
Suite 3100
Orlando, Florida 32801
(407) 648-7500
alejandro.salicrup@usdoj.gov
jamie.deboer@usdoj.gov

</div>

## RULE 88.9 CERTIFICATE

I, Alejandro Salicrup, certify that I have conferred with counsel in a good faith effort to resolve the issues raised in the motion and have been unable to do so.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 3, 2021 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and that the foregoing document is being served this day on all counsel of record via transmission of Notice(s) of Electronic Filing.

<div align="center">

_s/ Alejandro J. Salicrup_
Alejandro J. Salicrup

</div>

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 6:19-cr-209-ORL-40LRH

IVAN ANDRE SCOTT


**ORDER**

     The United States of America, having applied to this Court for an Order

precluding the testimony of Robyn Lynn Sztyndor and excluding Defense

Exhibits 35-36 and 39-42:

     IT IS HEREBY ORDERED that the testimony of Robyn Lynn

Sztyndor and Defense Exhibits 35-36 and 39-42 are excluded.


     IT IS HEREBY ORDERED.


     Date: _____


                          _____
                          Hon. Paul G. Byron
                          United States District Court Judge