UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                                  CASE NO. 6:19-cr-209-ORL-40LRH

IVAN ANDRE SCOTT

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America hereby submits this Sentencing Memorandum in accordance with the Court's Case Management Order on Sentencing, Dkt. 109, which directs the government to file a Sentencing Memorandum in those cases where the Defendant objects to the application of the Sentencing Guidelines.

The government has been made aware that the defendant, Ivan Scott ("Scott"), objects to the application of the Sentencing Guidelines in toto. According to Mr. Scott, the Sentencing Guidelines do not apply because he is innocent of the crimes of which he has been convicted of. The government disagrees with Mr. Scott's position and notes that Mr. Scott was convicted on all counts after a five-day trial.

**Objection to the Applicable Loss Amount**

Scott also objects to the loss amount included in the PSR. Specifically, Scott claims that the intended loss amount of $3,360,361.50 is overbroad. The

government disputes this assertion and notes that the intended loss, the amount billed to Medicare, is the appropriate method to calculate loss. *See United States v. Duran*, 620 F. App'x 687 (11th Cir. 2013). Here, the evidence introduced at trial showed that Mr. Scott and others sought to get as much money as they could out of Medicare. Tr. Tran., Volume II at 66 and 192. Further, the relevant evidence illustrated that Medicare was billed $3,360,361.50 as a result of Scott's conduct. Thus, the intended loss amount is a permissible loss amount in view of the evidence. *See also United States v. Hoffman-Vaile*, 568 F.3d 1335 (11th Cir. 2009); *United States v. Mateos*, 623 F.3d 1350 (11th Cir. 2010).

**Mass-Marketing Enhancement**

Scott objects to a mass marketing enhancement. The Sentencing Guidelines define mass-marketing as a plan, program, promotion, or campaign that is conducted through solicitation by telephone, mail, the Internet, or other means to induce a large number of persons to (i) purchase goods or services; (ii) participate in a contest or sweepstakes; or (iii) invest for financial profit. USSG § 2B1.1 cmt. n. 4(A). In *United States v. Moran*, 778 F.3d 942 (11th Cir. 2015), the Eleventh Circuit made clear that the mass marketing enhancement can be applicable in cases where patient recruiters engaged in mass-marketing by targeting Medicare beneficiaries. In *Moran*, the Eleventh Circuit concluded that the mass-marketing enhancement applied because the patient recruiter's conduct was foreseeable and orchestrated by the defendants. In other words, the mass-

marketing enhancement applied because the facts of the case centered on the defendants' repeated attempts to target and profit from new patient populations.

Here, the evidence admitted during trial showed that Scott and others targeted Medicare beneficiaries for the purposes of this fraud. As a result, Ivan Scott, through his company and employees, reached out to at least 525 Medicare beneficiaries in order to sign them up for fraudulent CGx testing. Tr. Tran., Volume IV at 190. Further, the evidence at trial showed that the Medicare beneficiaries were contacted via telephone and mail in order to sign them up for CGx testing. As a result, the enhancement should be applied in this case.

**Loss of More than $1 Million Enhancement**

Scott similarly disputes that he did not commit an offense involving a federal health program. However, this directly contravenes the evidence introduced at trial. Tr. Tran., Volume I at 41-43. Similarly, the evidence introduced at trial showed that the loss incurred by Medicare was more than $1 million.

**Sophisticated Means Enhancement**

Scott objects to the application of a sophisticated means enhancement. According to Scott, the only activities that he performed were the submission of invoices and hiring of telemedicine services, which he claims are insufficient to support such an enhancement. However, Scott's assertion obfuscates the sophisticated nature of the fraud he was convicted of.

The Eleventh Circuit has upheld the application of the sophisticated means enhancement when the conduct at issue involves the use of multiple corporations, the use of steps to conceal the fraud, and involved repetitive coordinated conduct. *See United States v. Barrington, 6*48 F.3d 1178 (11th Cir. 2011); *United States v. Bane*, 720 F.3d 818 (11th Cir. 2013).

Here, the evidence at trial showed that Ivan Scott, and others, fraudulently induced Medicare beneficiaries to take CGx tests. Through that process, Ivan Scott and his co-conspirators took the beneficiaries' medical histories with the purpose of making them appear "sicker than they really were." Tr. Tran., Volume IV at 190. The reason for making the Medicare beneficiaries appear more sick than they were was so that Ivan Scott and his co-conspirators could justify a more expensive test be billed to Medicare.

Moreover, Christopher Miano testified that Ivan Scott could be paid via two alternate methods of payment. The first method entailed the submission of CGx tests to a lab, waiting for Medicare to reimburse the claims, and then receiving a portion of those reimbursements as a kickback payment. Tr. Tran., Volume II at 83. Alternatively, Scott could "factor" his claim to a kickback. Under the factoring model, Scott could agree to sell his ability to collect a larger kickback when the Medicare reimbursement was received and instead agree to smaller upfront payment. Tr. Tran., Volume II at 83-86. Christopher Miano also

testified that there were various spreadsheets that helped Ivan Scott and others keep track of what Ivan Scott was owed during the period of the conspiracy.

The evidence and testimony presented at trial also showed that Scott was responsible for uploading the purported symptoms attributed to Medicare beneficiaries onto the Medsymphony portal so that a doctor could issue a prescription approving a test that was medically unnecessary.

Lastly, the evidence at trial also showed that Ivan Scott sought to hide the illegal nature of his actions by sending Christopher Miano two separate sets of fake invoices.

In light of these facts, it is beyond cavil that the sophisticated means enhancement applies in this instance.

**Leader or Organizer Enhancement**

Scott also objects to an enhancement as a leader or organizer. The government disagrees. This enhancement requires that the Court consider: "(1) exercise of decision-making authority, (2) nature of participation in the commission of the offense, (3) recruitment of accomplices, (4) claimed right to a larger share of the *1332 fruits of the crime, (5) degree of participation in planning or organizing the offense, (6) nature and scope of the illegal activity, and (7) degree of control and authority exercised over others." *United States v. Rendon*, 354 F.3d 1320 (11th Cir. 2003). Further, the enhancement requires that the convicted defendant be a leader or organizer of criminal activity that involved

"five or more participants or was otherwise extensive." *Id.* (quoting U.S.S.G. § 3B1.1(a)). "A participant is a person who is criminally responsible for the commission of the offense, but need not have been convicted." *Id.* (quoting U.S.S.G. § 3B1.1, cmt. n.1). Moreover, the Eleventh Circuit has recognized that a defendant does not have to be the sole leader or the kingpin of a conspiracy in order to be considered a leader or organizer. *Id.*

Here, the evidence presented at trial showed that the criminal activity at issue here involved at least four medical laboratories, Christopher Miano, Dean Austin, Manuel Larenas, John Berberian, James Simmons, and Ivan Scott. The same evidence showed that Scott employed several individuals including Tiffany Scott, Ariel Guzman, Juan Carlos, and other telemarketers who worked for Ivan Scott. Tr. Tran., Volume III at 161. The testimony from Manuel Larenas, Christopher Miano, and James Simmons also consistently revealed that Scott was the person who owned and controlled Scott Global, the call center that Scott utilized to recruit Medicare beneficiaries.

As such, this enhancement also applies.

**Obstruction of Justice Enhancement**

Scott objects to the application of an obstruction of justice enhancement under the Sentencing Guidelines.

Under U.S.S.G. § 3C1.1, a defendant's offense level is increased by two levels if the defendant willfully obstructed or impeded, or attempted to obstruct

or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense and the obstructive conduct related to, among other things, the defendant's offenses of conviction. *United States v. Newball May*, No. 19-13114, 2021 WL 717002 (11th Cir. Feb. 24, 2021) (citing U.S.S.G. § 3C1.1). According to § 3C1.1's commentary, this guideline may cover obstructive conduct that occurred before the start of the investigation if the conduct was purposefully calculated and likely to thwart the investigation or prosecution of the offense. *Id.*, cmt. n.1.

Conduct covered by this enhancement includes "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding." *Id.*, cmt. n.4(D). Importantly, whether or not an official investigation existed at the time, fails to defeat the application of the enhancement.

Here, the evidence introduced at trial showed that Scott directed a witness, James Simmons, to deny that Scott had ever paid him any money. Tr. Tran., Volume IV at 174-75. However, the evidence introduced at trial revealed that Scott did pay Jamie Simmons kickback payments in exchange for doctors' orders. *See Id.* at 75. Thus, this enhancement clearly applies.

In sum, it is clear that the Probation Office properly calculated the Sentencing Guidelines in this case. As such, the government respectfully moves this Court to apply the enhancements outlined in the Probation Office's Pre-Sentencing Report.

        Respectfully submitted,

        KARIN HOPPMANN
        Acting United States Attorney

By:   s/ *Alejandro J. Salicrup*
        Alejandro J. Salicrup
        Trial Attorney
        U.S. Department of Justice
        Criminal Division, Fraud Section
        400 W. Washington St., Suite 3100
        Orlando, FL 32801
        Tel. (407) 648-7500 /Fax (407) 648-7643

U.S. v. Ivan Andre Scott      Case No. 6:19-cr-209-ORL-40LRH

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

James Smith

Claudia Pastorius

          */s/ Alejandro J. Salicrup*
          Alejandro J. Salicrup
          Department of Justice Trial Attorney
          400 W. Washington Street, Suite 3100
          Orlando, Florida 32801
          Telephone: (407) 648-7500
          Facsimile: (407) 648-7643
          E-mail: Alejandro.salicrup@usdoj.gov